Elizabeth McLESTER

v.

GRAN COLOMBIANA LINE, et al.

Civ. A. No. 95–2488.

United States District Court,
E.D. Louisiana.

Oct. 13, 1995.

Patrick Joseph Sanders, Patrick J. Sanders, Metairie, LA, for plaintiff Elizabeth McLester.

John A. Bolles, John A. Scialdone, Terriberry, Carroll & Yancey, New Orleans, LA, for defendant Claus Peter Reederei.

W. Paul Andersson, Leake & Andersson, New Orleans, LA, for defendants German Seaman's Mission, Rev. Heinz Neumann.

## ORDER AND REASONS

JONES, District Judge.

Defendants Claus Peter Offen Reederei, Reverend Heinz Neumann and the German Seamen's Mission have brought this motion for partial summary judgment seeking dismissal of the plaintiff's claims against defendants Reverend Heinz Neumann and the German Seamen's Mission. Plaintiff, Elizabeth McLester, responded by filing a "Motion to Remand," requesting that the action be remanded to the jurisdiction of the state court. The matter was submitted on a previous date without oral argument. Having reviewed the submissions of the parties, the record and the applicable law, the Court

GRANTS the defendants' motion and DENIES plaintiff's motion for the reasons which follow.

### Background

This matter involves a claim by Elizabeth McLester ("McLester") for injuries allegedly sustained when she fell down a stairway aboard the M/V SAVANNAH ("Savannah") on April 27, 1994. Plaintiff was aboard the Savannah as a chaperone to a group of German language students on a field trip from Andrew Jackson High School in Chalmette, Louisiana.

The trip was organized by the students' teacher, Sydney Wolf ("Wolf"), who solicited chaperones from the parents of the students. Upon her decision to organize the field trip, Wolf contacted Reverend Heinz Neumann ("Rev. Neumann"), a Lutheran minister whom she knew had worked in the past with the local German Seamen's Mission ("the Mission"). Wolf asked Rev. Neumann if her students could visit the mission as part of their field trip and requested that he speak to the students about Germany's cultural ties to New Orleans. Rev. Neumann recommended that Wolf contact the Port of New Orleans ("the Port") to inquire about arranging a presentation and bus tour of the Port's facilities. Rev. Neumann also offered to assist Wolf in making arrangements with the Port and agreed to accompany the tour when it was arranged.

Wolf, the students, McLester and two other chaperones were provided transportation for the field trip aboard a parish school bus. Rev. Neumann accompanied the group on its tour of the Port. During this tour, Rev. Neumann realized that a German ship named Savannah was in port. Rev. Neumann made arrangements for the tour to board the vessel for a brief look. The group subsequently boarded the vessel. It is disputed whether Rev. Neumann was aboard the vessel during the time which the group was aboard. Defendants allege that Rev. Neumann was unable to stay for the students' visit aboard the Savannah due to previous commitments ashore. (Defendants' Memorandum in Support of Motion for Partial Summary Judgment, p. 2, R. Doc. 4.) Plaintiff nevertheless asserts that Rev. Neumann was present during a majority of the time that the group was aboard the vessel and only left for his appointment after McLester's alleged fall. (Plaintiff's Memorandum in Opposition to Joint Motion for Partial Summary Judgment, p. 2, R. Doc. 6.)

As the tour boarded the Savannah, they were greeted by the captain and several crewmembers, escorted to the ship's living area and directed to a side entrance where the group gathered before being taken to view the area from which the ship is steered. At some point McLester along with several of the students deviated from the main group and walked to the back of the ship's living area where they began walking up a back stairway. McLester and the students were called to come back to join the rest of the group, and at this point McLester allegedly fell while descending the stairs.

Plaintiff brought this action against Gran Columbiana, Claus Peter Offen Reederei as owner of the vessel ("Reederei"), Rev. Neumann and the Mission. Defendants Reederei, Rev. Neumann and the Mission have filed a motion for partial summary judgment alleging that plaintiff has fraudulently joined Rev. Neumann and the Mission in the action. Specifically, plaintiff has joined them as defendants for the sole purpose of defeating diversity jurisdiction. Moreover, plaintiff has virtually no possibility of recovery against them. Plaintiff, on the other hand, asserts that the failure of Rev. Neumann and the Mission as his employer to provide adequate guidance and direction caused in whole or in part McLester to be placed in a position of peril resulting in her injury. *Id.* at 4.

Plaintiff filed this action in Civil District Court for the Parish of Orleans on April 26, 1995. Defendants filed a petition for removal to Federal Court along with their motion for partial summary judgment based on fraudulent joinder of the non-diverse parties.[1] In

---

**1.** Defendants assert Federal Jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

response to defendants' removal, plaintiff filed a "Motion to Remand" to state court.

### Law and Application

■ The procedure for assessing fraudulent joinder of claims is similar to that used for ruling on a motion for summary judgment. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). In support of their removal petition, the defendants may submit affidavits and deposition transcripts; and in support of their motion to remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint. *Id.* When determining fraudulent joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law. *Id.*

■ After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned. *Carriere*, 893 F.2d at 100. The court is required to consider the factual allegations of plaintiff's petition in the light most favorable to plaintiff. *Pierre v. American Int'l Travel*, 717 F.Supp. 435, 436 (M.D.La.1989) (citing *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981)).

Plaintiff's petition does not state whether her claim arises under general maritime or Louisiana law. Nevertheless, a determination of whether plaintiff has stated a claim against Rev. Neumann and the Mission remains the same because the analysis of a maritime tort is guided by general principles of negligence law. *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir.1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

■ In ascertaining whether McLester has stated a claim against Rev. Neumann and the Mission, the Court must determine whether plaintiff can show that Rev. Neumann and the Mission were negligent. Principles of negligence require that in order to recover a plaintiff must prove that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached the duty; (3) the breach was a proximate cause; and (4) the plaintiff suffered actual damage. *Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag–Lloyd Aktiengesellschaft*, 855 F.2d 215, 216 (5th Cir.1988).

■ The first step is to determine whether Rev. Neumann had a duty to McLester. A tortfeasor is accountable only to those to whom a duty is owed. *Consolidated Aluminum Corp.*, 833 F.2d at 67. Determination of the tortfeasor's duty, and its parameters, is a function for the court. *Consolidated Aluminum Corp.*, 833 F.2d at 67. That determination involves a number of factors, including, most notably, the foreseeability of the harm suffered by the complaining party. *Id.* Duty is measured by the scope of the risk that negligent conduct foreseeably entails. *Consolidated Aluminum Corp.*, 833 F.2d at 67. The duty may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct, and not to other interests even of the same plaintiff which may in fact happen to be injured. *Id.* Thus, the critical inquiry is the foreseeability of the injury to McLester resulting from Rev. Neumann's alleged negligent conduct. To be found liable, plaintiff must show that defendants had "knowledge of a danger, not merely possible but probable...." *Id.* at 68.

■ Considering the factual allegations of plaintiff's petition in the light most favorable to plaintiff, *see Pierre, supra,* the Court finds that plaintiff has failed to establish the existence of a duty on the part of Rev. Neumann, and the Mission as his employer. *Pierre* is instructive in this finding. In *Pierre,* the plaintiff filed an action in state court alleging injury as a result of a fall down a stairway while preparing to board a Northwest Airlines ("Northwest") flight in Louisville, Kentucky. The plaintiff sued both Northwest, a Minnesota corporation, and plaintiff's travel agent, American Travel, Inc. ("American Travel"), a Louisiana corporation. Plaintiff alleged that American Travel was negligent on the grounds that it failed to make proper arrangements for plaintiff, who was travelling with her handicapped husband, thus

causing plaintiff to encounter a "dangerous stairway" while carrying her husband's crutches and baggage. *Pierre,* 717 F.Supp. at 436.

Northwest removed the case on the grounds of fraudulent joinder of the travel agency. *Id.* Plaintiff filed a motion to remand, challenging the allegation of fraudulent joinder. *Id.* The court held that the travel agency was fraudulently joined as a defendant for the purpose of defeating removal. *Pierre,* 717 F.Supp. at 435. The court found that the plaintiff failed to establish the existence of a duty on the part of the travel agency owed to the plaintiff because the travel agency could not be held accountable for the "dangerous stairway" since it had no ownership or control over the terminal areas. *Id.* at 437.

Similarly, in the case at bar, plaintiff has failed to establish the existence of a duty on the part of Rev. Neumann owed to McLester. Rev. Neumann cannot be held accountable for plaintiff's fall down the stairway or ladder since he neither owned nor controlled the vessel. Plaintiff asserts that Rev. Neumann's failure to provide adequate guidance and direction aboard the Savannah resulted, in whole or in part, in her injury. Plaintiff supports her assertions with the proposition that Rev. Neumann voluntarily assumed a duty to protect her, which duty he breached. (Plaintiff's Memorandum in Opposition to Joint Motion for Summary Judgment, p. 3–4, R. Doc. 6.) However, plaintiff's proposition would only be correct if, as stated above, Rev. Neumann had control over the vessel and its appurtenances. Rev. Neumann does not own nor control the vessel, and plaintiff does not dispute this fact. Moreover, plaintiff has not shown that Rev. Neumann had any knowledge or was aware of any danger that would probably result in injury to the plaintiff. Plaintiff merely offers rhetorical support. To be sure, this cannot carry the day.

Taking the well-pleaded factual allegations as true, the petition alleges no facts which establish a legal duty on the part of Rev.

Neumann towards plaintiff.[2] Therefore, the Court finds that plaintiff has no possibility of recovery against Rev. Neumann and the Mission as his employer.

Accordingly,

**IT IS ORDERED** that defendants' Rev. Heinz Neumann and the German Seamen's Mission motion for partial summary is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to remand is **DENIED.**

---

**2.** Having failed to prove the first prong of this four related prongs test, the Court pretermits any further discussion as to the remaining three requirements. *See Uncle Ben's Int'l,* 855 F.2d at 216.